IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**MELISSA SIMMS**                                                                           **PLAINTIFF**

**VS.**                        **CASE NO. 3:17CV00222 PSH**

**NANCY A. BERRYHILL, Acting Commissioner,**
    **Social Security Administration**                              **DEFENDANT**

**ORDER**

      Plaintiff Melissa Simms ("Simms"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge ("ALJ") erred: (1) in determining her residual functional capacity ("RFC"), primarily by improperly evaluating the opinion of treating physician Dr. Vellozo; and (2) by improperly evaluating her subjective complaints. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on June 16, 2016. (Tr. 33-55). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from September 12, 2014, through August 17, 2016, when the ALJ ruled against Simms. Although Simms alleged an earlier onset date, the pertinent starting date for this case is September 12, 2014, because a prior decision was issued on September 11, 2014. *Res judicata* precludes consideration of the claim through the date of the prior decision.

1

*The Administrative Hearing:*

Simms, who was 46 years old at the time of the administrative hearing, attended school through the tenth grade, later earning a GED. She has past relevant work experience as a certified nurse's aide, and worked until 2012. According to Simms, her disabling problems include back pain, leg numbness, ankle and knee problems, wrist pain, carpal tunnel syndrome ("CTS") in both hands, sleep problems, and hearing loss. As a result of her impairments, Simms indicated she could stand for 20-25 minutes before needing a 30 minute rest period, could peel potatoes for 10-15 minutes before needing a 5-10 minute recovery period, could lift 5 pounds, and could not sit and focus for very long.[1] She described very limited daily activities. According to Simms, she has trouble going to sleep at night, often falling asleep at 1 or 2 a.m. She stated she wakes up at 7 or 8 am but does not feel rested. After making coffee and watching television, Simms typically sleeps on her couch until early afternoon. Then, she stated she does housework in small doses. Although she can drive, she does not like to do so because it is painful. Other than occasionally going shopping with her husband, Simms stated she only visits her mother and her grandchildren. Simms deals with her impairments by taking prescription pain medication, a muscle relaxer, over-the-counter medication, and by limiting her activity. Simms acknowledged that her treating physician had not taken any recent MRIs or x-rays, had not referred her to an orthopedist or surgeon, and had not referred her for physical therapy. She also conceded that Dr. Woloszyn recommended she have CTS release in 2015 but she declined to do so because others, including her sister, told her the

---

[1] Simms testified to trouble sitting in a hard chair, such as a dining room chair. She stated she could sit in a dining room chair and focus on a puzzle or book for "about three seconds." (Tr. 46). When asked about the chair she was using at the administrative hearing, Simms said she "was trying to tolerate it." (Tr. 46). The hearing lasted 25 minutes. (Tr. 34, 55).

surgery would not be effective. (Tr. 36-51).

Dianne Smith ("Smith"), a vocational expert, stated Simms' past work as a certified nurse's aide was semi-skilled work, often performed at the heavy exertional level. The ALJ posed a hypothetical question to Smith, asking her to assume a worker of Simms' age, education, and experience, who could perform light work but only occasionally stoop, kneel, crouch, or crawl, could perform frequent but not constant fingering and grasping with the bilateral upper extremities, is limited to communicating and hearing simple instructions due to hearing issues, and who should not be in a noise environment above the moderate level as defined in the *Dictionary of Occupational Titles*. Smith responded that such a worker could not perform Simms' past relevant job but could perform other jobs, such as marking clerk or production assembler. A second hypothetical question was posed, assuming the same parameters as in the first hypothetical but adding the restrictions that the worker would be off task 20% of the work day and would miss at least 3 days per month on an unscheduled basis. Smith identified no jobs for the worker described in the ALJ's second hypothetical question. (Tr. 52-55).

*ALJ's Decision:*

In his August 17, 2016, decision, the ALJ determined Simms had the following severe impairments: degenerative disc disease; osteoarthritis of the knee, hypertension, CTS, obstructive sleep apnea, and bilateral hearing loss. The ALJ further determined Simms had the RFC to perform light work with the restrictions which mirrored those posed to Smith in the ALJ's first hypothetical question. The ALJ, citing the appropriate factors, assessed Simms' subjective allegations, finding that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . ." (Tr. 23). In

reaching this conclusion, the ALJ considered the testimony at the administrative hearing, the responses submitted by Simms in a Function Report dated March 2015, as well as the medical history and records, with a focus on the records generated during the relevant period. The ALJ considered the opinion of treating physician Vellozo, finding it was not consistent with the record as a whole, and assigning it "little weight." (Tr. 23). The ALJ also evaluated the findings of state agency physicians Jerry Thomas and Robert Redd. These physicians were accorded "partial weight" because the ALJ found their conclusion that Simms' hearing issues were nonsevere was not supported by the record. The ALJ also cited the absence of any back surgery to support his finding that Simms' back problems were not as severe as suggested by her testimony. Relying upon Smith's testimony that Simms could perform the jobs of marking clerk and production assembler, the ALJ concluded Simms was not disabled. (Tr. 16-26).

*Medical Evidence During the Relevant Period:*

The ALJ acknowledged significant treatment records for Simms from 2002 through September 2014, the date of the decision in her prior case. Following is a summary of her treatment during the relevant period, from September 12, 2014, through August 17, 2016, the date of the ALJ's decision:

01/22/2015  Simms is seen at Lawrence Health Services, complaining of pain in all of her body, worse in her hands and feet, elevated blood pressure, dizziness, and sleep issues. Diagnosis was diabetes, chronic pain, degenerative joint disease, peripheral neuropathy, and hypercholesterolemia. She was prescribed Tramadol, Doxepin, and Lisinopril. (Her most recent medical care prior to this visit was a nerve conduction study performed in August 2014.) (Tr. 462-463).

02/26/2015  Returning to Lawrence Health Services, Simms complained of increased pain in her back and hands. Diagnosis was diabetes, insomnia, and severe hypercholesterolemia. Prescriptions were refilled. (Tr. 460-461).

4

| | |
|---|---|
| 05/26/2015 | Simms returned to Lawrence Health Services for lab work. She complained of a spot on her left hand, and indicated she snored. The care plan for this visit called for a topical cream, Topomax, and a sleep study to be done. (Tr. 565-566). |
| 06/23/2015 | Dr. John Jiu evaluated Simms' hearing for the social security administration, diagnosing mixed hearing loss, bilateral, and Eustachian tube dysfunction, bilateral. Dr. Jiu prescribed Prednisone. (Tr. 593-596). |
| 06/29/2015 | Simms was seen at Family Medical Clinic for "1 mo. ck. up." (Tr. 602). A comparison of signatures shows that Dr. Vellozo ("Vellozo") was her physician at Family Medical Clinic. (Tr. 603, 682, 689). Simms told Vellozo the Tramadol was not working and an upcoming sleep study was noted. (Tr. 602-603). |
| 07/28/2015 | Dr. John Woloszyn, an orthopedist, saw Simms for hand pain and numbness, and recommended surgery, explaining "in detail" why she "absolutely needs to have this done." Without the surgery, he explained that the "median nerve is destined to be permanently injured." (Tr. 600). |
| 08/14/2015 | Vellozo conducted a sleep study, finding severe obstructive sleep apnea. Vellozo recommended a repeat study, and advised Simms to lose weight and stop smoking. (Tr. 608-610). |
| 09/22/2015 | Returning for a one month follow-up, Simms informed Vellozo she was cutting back on her smoking. She reported she was smoking 1 and ½ packs daily. She also reported back pain at 8 on a scale of 1-10. (Tr. 628-629). |
| 09/25/2015 | Simms underwent a CPAP titration under Vellozo's observation. Vellozo recommended Simms use a CPAP, lose weight, and stop smoking. (Tr. 630-631). |
| 12/16/2015 | Simms returned to Family Medical Center for a 3 month followup. She reported smoking a pack of cigarettes daily, indicated her back pain had worsened to 10 on a scale of 1-10, and was reportedly using the CPAP machine with some complications. Vellozo counseled her to quit smoking, and cited the need for a better fitting CPAP mask. Vellozo prescribed Tramadol. (Tr. 672-673). |
| 03/16/2016 | Simms returned to Family Medical Center for lab work. She stated she had fallen twice in the prior week, that her legs give away, and her back pain was 10 on the 1-10 scale. (Tr. 690-691). |
| 05/20/2016 | Simms returned to Family Medical Center for a check up, reporting back pain |

at 10, cramping in her feet, and having fallen. She reported she smoked 1 pack daily. Vellozo added Zanaflex to address Simms' muscle spasms. (Tr. 688-689).

In all, Simms appeared for either treatment or lab work twelve times during the relevant period. Of these, one visit was for hearing issues, one visit for CTS, and two visits relating to sleep issues and CPAP testing. On the date when she last saw Vellozo, he executed a Medical Source Statement checklist indicating the following: Simms could lift less than 10 pounds occasionally or frequently; she could stand and walk less that 2 hours in a work day, with a maximum of 30 minutes at one time; she could sit less than 2 hours in a work day, with a maximum of 45 minutes at one time; she would need frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking; could reach in all directions 1/3 of the work day; could finger 1/3 of the work day; could handle for 1/3 of the work day; she would have a decreased ability to concentrate and persist; she would "very frequently" need to be redirected; and she should avoid all exposure to extreme cold or heat, high humidity, fumes, odors, dust, gas, perfumes, soldering fluxes, solvents/cleaners, chemicals, and sunlight. (Tr. 681-682). Vellozo also indicated he had treated Simms from 2012.

**Error in determining Simms' RFC:**

Simms faults the ALJ's RFC determination finding her capable of light work with numerous restrictions. It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ considered the "medical records, opinion evidence and testimony" in reaching his RFC conclusion. (Tr. 24). The ALJ's examination included medical records preceding the onset

of the relevant period, including nerve conduction studies, an EMG, and MRIs from 2011 through 2014. The results of these tests vary, with a 2011 MRI showing a mild protrusion at L5-S1, a normal nerve conduction study and EMG in 2011, and an abnormal nerve conduction study in 2014. The ALJ correctly notes that Vellozo, in July 2015, referred Simms to an orthopedist based upon the results of a nerve conduction study. This referral, to Dr. Woloszyn, was for her CTS, and resulted in the recommendation for CTS release. As previously noted, Simms declined this recommendation. Simms' major complaint of back pain, however, did not trigger additional imaging tests or referrals or recommendations for surgery during the relevant period. The ALJ found that the "objective imaging that was available did not suggest back issues that would be sufficient to limit the claimant beyond the light exertional level." (Tr. 23). The ALJ's survey of the medical evidence was thorough, and we find no error in this regard.

The ALJ addressed the opinion offered by Vellozo in the checklist Medical Source Statement, and afforded it "little weight" due to its inconsistency with the record as a whole and its lack of support from objective test results. (Tr. 24). Substantial evidence supports this treatment by the ALJ. A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006). Here, Vellozo's opinion does not cite imaging results or other clinical or laboratory results to corroborate his statement. Nor is his opinion consistent with clinical findings recorded in his treatment notes. Instead, they are consistent with the subjective complaints Simms reported to Vellozo. The ALJ also noted that Simms' subjective complaints at the administrative hearing were

7

inconsistent with her abilities as described in her Function Report dated March 2, 2015.[2] (Tr. 187-194). In summary, the ALJ's consideration of Vellozo's opinion was supported by substantial evidence.

The ultimate RFC determination was based upon the discounting of Vellozo's opinion, and other factors, including the scarcity of treatment during the relevant period and the absence of any surgical intervention. We find substantial evidence supports the ALJ's RFC conclusion. The ALJ is charged with examining the entire record, and it is within his purview to weigh the evidence, opinions, and lack of evidence in reaching his conclusion. Simms' first claim for relief is without merit.

**Credibility:**

Simms concedes that the ALJ listed the pertinent factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), in addressing her credibility. However, Simms maintains the ALJ did not discuss any of these factors. Absent any discussion, Simms urges remand for a proper consideration of her subjective complaints. The ALJ's credibility assessment comported with the requirements of *Polaski*. While not every factor was addressed, the ALJ focused on those factors most influential in this case. *See, e.g., Strongson v. Barnhart*, 361 F.2d 1066 (8th Cir. 2004). For example, the ALJ emphasized the objective medical findings, and noted how the plaintiff's subjective complaints were not consistent with the medical evidence. The ALJ also noted the absence of any surgical intervention on her back during the relevant period, the absence of imaging tests, and Simms' refusal to undergo the "necessary" surgery on her right hand. (Tr. 22). It is not appropriate for this Court

---

[2] In the Function Report, Simms indicated her impairments prevented her from working, walking up stairs, running, and mowing the yard. She could walk a block and lift ten pounds, and her daily activities included preparing a full course meal, cleaning, laundry and doing dishes.

to perform a *de novo* review of the factors. Rather, our inquiry is whether substantial evidence supports the ALJ's findings. We find that it does.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Simms' complaint is dismissed with prejudice.

IT IS SO ORDERED this 26th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE